## A98A1098. WRIGHT v. THE STATE.
(502 SE2d 756)

BLACKBURN, Judge.

A jury convicted Paul Richard Wright of aggravated stalking and making harassing telephone calls. Wright appeals only his conviction for aggravated stalking, raising several enumerations of error. For the reasons set forth below, we affirm.

1. Wright contends the trial court erred in denying his motion for a directed verdict of acquittal and that the evidence adduced at trial was insufficient to support his conviction. "The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Punctuation omitted.) *Wright v. State*, 228 Ga. App. 779 (1) (492 SE2d 680) (1997). Viewed in this light, the record reveals these pertinent facts:

When Wright and his family moved to Georgia, they stayed for several weeks with Wright's niece and her husband, Anita and Bob Bales. After approximately four weeks, the Baleses asked the Wrights to leave. Wright, who was upset at having been "kicked out" started calling the Baleses' residence, making threats of bodily injury and property damage. On August 29, 1996, Wright called Bob Bales and said: "I will get even, I will blow your . . . head off, I know how to use a gun." The Baleses reported the calls to the authorities and Wright was arrested and charged with making harassing phone calls. Wright was released pending trial upon the magistrate court's bond order directing that he "stay away, absolutely, directly or indirectly, by person, telephone, messenger or any other means of communication from Bob Bales."

During the late evening of December 18, 1996, as the Baleses

were unloading Christmas presents from their van, they saw a red 1992 Pontiac Grand Am pass by their home. They could not see who was driving at first, but Bob Bales believed the car was Wright's. The Baleses watched as the car passed by their home and pulled into a driveway near the end of their dead-end street. After pausing a moment, the driver turned around and began to drive past the Baleses' residence again, moving very, very slowly. Bob Bales walked to the street and pretended to throw a rock at the car, hoping this would make the driver stop the car, get out, and be seen by witnesses. The ploy worked. When Wright got out of the car, Bob Bales asked him what he was doing on their street. Wright responded that "it was a free country and a free road." When Bob Bales reminded Wright of the conditions of his bond, Wright said he did not care. When Anita Bales said she would call the police, Wright said to go ahead, that he would be gone by the time the police arrived. The Baleses testified they feared Wright and, consequently, reported the incident to police.

Wright argues the trial court should have directed a verdict of acquittal on the aggravated stalking charge because the state failed to show that Wright contacted Bob Bales without consent in violation of OCGA § 16-5-91 (a). Wright claims Bob Bales was the one who voluntarily contacted him by throwing a rock at his car and then engaging him in conversation. Wright's argument ignores the fact that Bob Bales' behavior was a reaction to something Wright had already done: driving down a dead-end street where he had no business to be and passing by the Baleses' home in a car Bob Bales recognized as Wright's. That slow drive-by constituted "contact" because people of ordinary intelligence would understand the act to communicate Wright's contempt for the court's bond order and, thus, Wright's implicit intent to continue, or even to carry out, his previous threats to the Baleses. See *Johnson v. State*, 264 Ga. 590, 591 (1) (449 SE2d 94) (1994) (" 'contact' is readily understood by people of ordinary intelligence as meaning '(t)o get in touch with; communicate with' "); *Fly v. State*, 229 Ga. App. 374, 376 (1) (494 SE2d 95) (1997). The trial court did not err in denying Wright's motion for a directed verdict. And, the evidence, viewed in the light most favorable to the verdict, was sufficient to permit the jury to find the essential elements of aggravated stalking beyond a reasonable doubt under the standard set forth above. See, e.g., *Fly v. State*, supra.

2. Wright also argues he was entitled to a directed verdict because of a fatal variance between the allegations of the indictment and the evidence adduced. Wright argues the indictment alleged he "contacted" Bales when, at most, the evidence shows he only "surveilled" him. For the reasons set forth in Division 1 above, this argument is without merit.

3. Wright contends the trial court erred in refusing to give his requested charge on the definition of "contact" and in charging, verbatim, the whole of the aggravated stalking statute, OCGA § 16-5-91. Wright, however, failed to preserve any objection to the jury charge because he neither made objection during the charge conference nor reserved the right to raise additional objections on motion for new trial or on appeal. Wright's counsel stated he had "no exceptions" to the charge. Accordingly, he waived the right to raise these issues on appeal. *Smith v. State*, 268 Ga. 42, 43 (2) (485 SE2d 189) (1997).

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED MAY 22, 1998.

*Clark & Towne, David E. Clark, Bridgette E. Dawson*, for appellant.

*Daniel J. Porter, District Attorney, John S. Melvin, Assistant District Attorney*, for appellee.