## A03A0477. JOHNSON v. THE STATE.
(579 SE2d 809)

BLACKBURN, Presiding Judge.

Following a jury trial, Ronald Eugene Johnson appeals his convictions for simple assault, battery, aggravated battery, terroristic threats, and multiple counts of stalking, aggravated stalking, and second degree criminal damage to property, all perpetrated against his estranged wife. Johnson contends that: (1) the evidence was insufficient to support the verdicts; (2) certain convictions should have been merged; (3) he received ineffective assistance of counsel; and the trial court erred by (4) denying his motion to recuse, (5) denying his motion for continuance to hire new counsel, and (6) allowing the victim to testify to the amount of damage to her vehicle. For the reasons that follow, we affirm the convictions, but vacate two of the sentences on the basis of merger and remand for resentencing.

1. There was sufficient evidence to support each of the convictions, which were based on seven incidents occurring over a period of fourteen months. In every case, the evidence was sufficient to permit a rational jury to find all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia.*[1]

> On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the verdict will be upheld.

*Moore v. State.*[2] We review the crimes in the order in which they occurred.

---

[1] *Jackson v. Virginia,* 443 U. S. 307, 319-320 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Moore v. State,* 254 Ga. App. 134 (561 SE2d 454) (2002).

## Count 1, Battery

On May 10, 1996, Deputy Keith Edwards investigated a domestic disturbance at the home of Johnson and Barbara Sutton, Johnson's wife. Sutton had scrapes and bruises on her neck consistent with being choked, and told Edwards that Johnson struck her, choked her, and threw her against a wall. There was ample evidence that Johnson committed battery by "intentionally caus[ing] substantial physical harm or visible bodily harm to another." OCGA § 16-5-23.1 (a).

## Counts 3 and 4, Stalking and Simple Assault

Johnson was charged with stalking Sutton by following her to her doctor's appointment. He was also charged with aggravated assault based on aggressive driving; that charge resulted in a conviction for the lesser included offense of simple assault.

A person commits the offense of stalking under OCGA § 16-5-90 when he

> follows, places under surveillance, or contacts another person [without her consent] for the purpose of harassing and intimidating the other person. . . . [T]he term "harassing and intimidating" means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

On July 3, 1996, after the couple had separated following another physical altercation, Johnson appeared uninvited at the Heart of Georgia Women's Center, where Sutton was a patient, and demanded to see her. He was loud and hostile, and refused to leave until the Center's director told him the police had been called. Sutton knew Johnson was there and was afraid of him. Johnson followed her in his vehicle after she left the center, yelling at her, impeding her movement, forcing her into oncoming lanes of traffic, and, on several occasions, bumping her car. During this encounter, she was afraid both of him and of wrecking her vehicle. A witness corroborated much of this testimony.

There was sufficient evidence to convict Johnson of stalking. Given Johnson's history of violence toward Sutton, a jury could have found that his actions at the health center were intended to, and did, harass or intimidate her. Johnson's aggressive driving constituted at

least simple assault, in that it placed Sutton "in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2).

### Counts 6 and 7, Stalking and Damage to Property in the Second Degree

On January 25, 1997, Johnson telephoned Sutton and told her to "go out there and look and see what he had did to [Sutton's] car." Sutton observed that her car had been scratched or "keyed" multiple times. Evidence from a body shop employee placed the cost of repair at $1,216. Five days later, Sutton discovered a dead kitten on her front steps; Johnson later called Sutton and told her "the way the cat is, is the way you're going to be."

There was sufficient evidence to find Johnson guilty of stalking Sutton on January 25, in that Johnson contacted Sutton without consent as part of a pattern of behavior intended to harass and intimidate her. See *Bogan v. State*[3] (evidence of later act admitted to prove course of conduct). There was also sufficient evidence Johnson committed second degree criminal damage to property by intentionally damaging Sutton's car, in excess of $500. OCGA § 16-7-23 (a) (1).

### Counts 9 and 10, Aggravated Stalking and Aggravated Battery

Aggravated stalking is stalking "in violation of a judicial order prohibiting such conduct." *State v. Rooks*.[4] See OCGA § 16-5-91 (a). A person commits aggravated battery under OCGA § 16-5-24 (a) "when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof."

On February 28, 1997, Sutton had just parked her vehicle at a supermarket when Johnson ran his vehicle into hers. Johnson then approached Sutton, threatened to kill her, opened her door, grabbed and twisted her wrist, and punched her nose, breaking it. As a result of this incident, Sutton's wrist was placed in a splint, and she could not use her arm for two to three weeks. On the date of this incident, a permanent protective order was in effect prohibiting Johnson from contacting Sutton or her family, or touching or damaging her property.

The evidence was sufficient to convict Johnson of aggravated stalking. The evidence was also sufficient to convict Johnson of

---

[3] *Bogan v. State*, 255 Ga. App. 413, 414-415 (565 SE2d 588) (2002).
[4] *State v. Rooks*, 266 Ga. 528, 529 (1) (468 SE2d 354) (1996).

aggravated battery. The issue of what constitutes disfigurement is for the jury to decide, and the disfigurement need not be permanent. *Grace v. State*;[5] *Perkins v. State*.[6] A broken nose has been held sufficient to prove disfigurement, *In the Interest of H. S.*,[7] and "the temporary reduced use of a bodily member may be sufficient to render it useless." (Punctuation omitted.) *Ahmadi v. State*[8] (broken finger in splint for ten days sufficient evidence of uselessness). Sutton's injuries satisfied two alternative methods of causing bodily harm, and there was sufficient evidence that Johnson inflicted them maliciously. *Dunn v. State*.[9]

### Counts 11 and 12, Aggravated Stalking and Terroristic Threats and Acts

A person commits terroristic threats and acts when he "threatens to commit any crime of violence . . . with the purpose of terrorizing another." OCGA § 16-11-37 (a). Corroborating testimony is necessary from someone other than the target of the threat. Id. On March 6, 1997, Johnson drove past Sutton, who was emerging from her vehicle at her grandmother's house, and yelled at her that he was "going to vandalize that one, too." After Sutton entered the house, Johnson returned on foot, confronted Sutton's grandmother, repeated his threat to vandalize the vehicle, and told her Sutton "didn't have long to live," and that he was going to kill both of them. Sutton was in the house but within earshot. A neighbor testified that she heard Johnson state that Sutton did not have long to live.

A protective order was in effect on March 6, and there was sufficient evidence that Johnson violated it by contacting Sutton and her family for the purpose of harassing or intimidating her to support a conviction for aggravated stalking. Johnson's statement that Sutton "didn't have long to live" could reasonably be inferred as a threat to kill Sutton, and the threat was corroborated, providing ample evidence for the terroristic threats conviction.

### Counts 13 and 14, Aggravated Stalking and Second Degree Damage to Property

Just after midnight on March 28, 1997, while Sutton was staying at her parents' house, Johnnie Tharpe, Sutton's father, witnessed Johnson come into his yard and spray paint the word "bitch" on Sut-

---

[5] *Grace v. State*, 210 Ga. App. 718 (437 SE2d 485) (1993).
[6] *Perkins v. State*, 269 Ga. 791, 796 (505 SE2d 16) (1998).
[7] *In the Interest of H. S.*, 199 Ga. App. 481 (405 SE2d 323) (1991).
[8] *Ahmadi v. State*, 251 Ga. App. 189, 190 (554 SE2d 215) (2001).
[9] *Dunn v. State*, 242 Ga. App. 525, 528 (530 SE2d 236) (2000).

ton's vehicle. After Johnson completed his act of vandalism, Tharpe woke Sutton and told her what had happened. At about the same time, Johnson was seen by an acquaintance walking from the vicinity of the house. Two days later, after the spray paint was removed, Sutton observed that her vehicle had again been keyed. An employee of a body shop estimated the cost of repair at $2,138. Similar incidents occurred on April 4 and April 7. Sutton testified that Johnson's continual violations of court orders made her fearful.

Johnson was convicted of aggravated stalking for spray painting the vehicle and damage to property for keying it. A protective order was still in effect, and Johnson's act of intruding on Sutton's father's property in the middle of the night and spraying a vulgar and insulting word directed at Sutton was evidence of intent to harass and intimidate in violation of that order. Sufficient circumstantial evidence supported the conviction for second degree damage to property. Johnson took credit for keying another of Sutton's vehicles two months earlier, and just three weeks earlier had promised to vandalize this vehicle. Furthermore, he was actually seen spray painting the vehicle two days earlier. A rational jury could infer beyond a reasonable doubt that Johnson was the perpetrator in this incident as well.

*Counts 19 and 20, Aggravated Stalking and Second Degree Damage to Property*

On July 19, 1997, Sutton was visiting the home of Lonnie Holmes and heard a loud noise in front of the house. Holmes and Sutton observed that Sutton's vehicle's window had been broken and its door had been scratched, and moments later saw Johnson run through the backyard. At the time, Johnson was under a permanent family violence order and pre-trial release order prohibiting him from contacting Sutton or damaging her property. Sutton paid more than $500 to repair the vehicle.

There was sufficient evidence to support Johnson's convictions for aggravated stalking and second degree damage to property. Johnson's act of vandalism in direct violation of a court order was a nonverbal act that sufficiently constituted "contact" under the stalking statutes. See *Wright v. State*[10] (purely nonverbal actions can constitute harassment). A rational jury could find that such acts were intended to harass and intimidate, and reasonably placed Sutton in fear for her safety.

2. Johnson contends the multiple counts that arose out of each single incident should merge with each other as a matter of fact.

---

[10] *Wright v. State*, 232 Ga. App. 646, 647 (502 SE2d 756) (1998).

Offenses merge as a matter of fact when "the different offenses are proven with the same facts. For example, if one crime is complete before the other takes place, the two crimes do not merge." (Punctuation omitted.) *Reeves v. State*.[11]

The trial court erred in failing to merge Counts 19 and 20. Clearly, Johnson committed criminal damage to property in vandalizing Sutton's vehicle, by keying and/or breaking a window on said vehicle as alleged in Count 20. Count 19 of the indictment charged Johnson with aggravated stalking "by keying and breaking a window on said victim's father's Chevy Blazer," the same conduct used to prove damage to property. Because the evidence used to support the stalking charge was the same evidence used to support the damage to property charge, the two convictions must merge as a matter of law. See *Cherry v. State*.[12] None of the other counts merge because, in each case, one crime was completed before the other began.

3. Johnson claims he was denied his constitutional right to adequate legal representation because his trial counsel was ineffective. A court's determination with respect to effective assistance of counsel will be affirmed unless clearly erroneous. *Chapman v. State*.[13] To prevail on such a claim, a defendant must show

> that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations omitted.) Id. at 349-350 (2); see also *Strickland v. Washington*.[14] The trial court determined, after a hearing, that Johnson was not denied effective assistance of counsel, and we agree.

(a) Johnson contends that counsel was unprepared for trial, called no witnesses, offered no defense, and coerced Johnson into waiving his right to testify. Johnson has not met his burden of proof on these contentions.

Counsel filed 18 pre-trial motions. At the hearing, she testified about her trial preparation, that she did not call witnesses for tactical reasons, and that she advised Johnson not to testify, but he made the decision. The trial transcript further supports the voluntariness

---

[11] *Reeves v. State*, 233 Ga. App. 802, 805 (2) (505 SE2d 540) (1998).
[12] *Cherry v. State*, 178 Ga. App. 483, 485 (343 SE2d 510) (1986).
[13] *Chapman v. State*, 273 Ga. 348, 350 (541 SE2d 634) (2001).
[14] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

of Johnson's decision. The trial judge carefully explained to Johnson his right to testify, and Johnson stated that he understood and had decided not to. Johnson did not rebut any of this evidence, and "utterly failed to overcome the 'strong presumption' that his counsel's performance fell within a 'wide range of reasonable professional conduct' and his counsel's decisions were 'made in the exercise of reasonable professional judgment.'" *Baitey v. State*[15] (quoting *Strickland*, supra at 689). Nor can Johnson demonstrate prejudice from counsel's failure to call witnesses "in the absence of a showing that such evidence would have been relevant and favorable" to him. *Goodwin v. Cruz-Padillo.*[16]

(b) Johnson claims counsel was ineffective in improperly filing a motion to recuse. However, Johnson has not shown that, even if the motion was more artfully drafted, there is a reasonable chance it would have been granted.

When presented with a motion to recuse, the trial judge must determine whether, "assuming the truth of the facts alleged, a reasonable person might conclude that the judge harbors bias, stemming from an extrajudicial source." *Berry v. State.*[17] If the judge finds the motion timely and the affidavit legally sufficient, and if the facts alleged would warrant recusal, another judge must hear the merits of the motion. *Birt v. State.*[18]

Here, the motion alleged the judge was biased because (1) he had presided over Johnson and Sutton's divorce proceedings, and (2) he was district attorney at the time some of the charged incidents occurred. It is unlikely this motion would have succeeded on either ground. First, previous contact with a defendant by a judge in his judicial capacity is not grounds for recusal. *Butts v. State.*[19] Second, there is no evidence the district attorney's office handled any charges against Johnson when the judge was district attorney. OCGA § 15-1-8 (a) (3). Counsel cannot be found ineffective for improperly bringing a meritless motion. *Berry,* supra.

(c) Counsel was not ineffective for failing to bring a motion to sever the charges. Counsel testified that she did not bring the motion because she did not think it would be granted. There was also evidence such a motion would have been strategically unsound. Reasonable tactical decisions will not support a finding of ineffectiveness. *Grier v. State.*[20] Furthermore, Johnson has not shown how this deci-

---

[15] *Baitey v. State,* 275 Ga. 681, 683 (2) (571 SE2d 733) (2002).
[16] *Goodwin v. Cruz-Padillo,* 265 Ga. 614, 615 (458 SE2d 623) (1995).
[17] *Berry v. State,* 267 Ga. 605, 607 (3) (481 SE2d 203) (1997).
[18] *Birt v. State,* 256 Ga. 483, 484 (350 SE2d 241) (1986).
[19] *Butts v. State,* 273 Ga. 760, 762-763 (546 SE2d 472) (2001).
[20] *Grier v. State,* 273 Ga. 363, 365 (541 SE2d 369) (2001).

sion prejudiced him; contrary to his argument, there is no evidence counsel was "overwhelmed" by the volume of evidence.

4. The trial court did not err in denying Johnson's motion to recuse. The trial court correctly found the accompanying affidavit legally insufficient. The affidavit accompanying the original motion was legally insufficient because it was not notarized (the amended motion had no affidavit accompanying it), and the affidavit was substantively deficient because it did not state facts which, if true, would compel recusal. *Butts*, supra. The court did not err in denying the motion.

5. We find no error in the trial court's denial of Johnson's oral motion for continuance, made on the eve of trial, to obtain substitute counsel. A motion for continuance is addressed to the sound discretion of the trial judge, and the refusal to grant it will not be disturbed absent clear abuse of discretion. *Dutton v. State*.[21] Generally, "where a party has had several months in which to employ counsel and neglects to do so, no continuance will be granted for such reason." *McLendon v. State*.[22] As there is no direct evidence of the motion or its denial anywhere in the record, we presume the trial court acted properly.

6. Johnson's contention that the trial court erred in allowing Sutton to testify to the amount of damage to her vehicle in Count 20 is without merit. Sutton properly testified from personal knowledge. *Holbrook v. State*.[23]

For the foregoing reasons, we affirm the convictions, but vacate the sentences with respect to Counts 19 and 20, which are merged as a matter of law, and remand to the trial court for resentencing consistent with this opinion.

*Judgment affirmed in part, vacated in part and case remanded with direction. Ellington and Phipps, JJ., concur.*

DECIDED MARCH 19, 2003.

*Jeffrey L. Grube*, for appellant.
*Kelly R. Burke, District Attorney, Katherine K. Lumsden, Assistant District Attorney*, for appellee.

---

[21] *Dutton v. State*, 228 Ga. 850, 851-852 (188 SE2d 794) (1972).
[22] *McLendon v. State*, 123 Ga. App. 290, 295 (2) (180 SE2d 567) (1971).
[23] *Holbrook v. State*, 168 Ga. App. 380, 381 (308 SE2d 869) (1983).