**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J. and MERCIER, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

**August 27, 2021**

# In the Court of Appeals of Georgia

A21A1126. WATKINS v. THE STATE.

MERCIER, Judge.

Ervin Watkins, Jr., appeals his conviction of aggravated battery,[1] claiming that the evidence was insufficient, that the State committed prosecutorial misconduct, and that the trial court erred by denying his motion for mistrial and in evidentiary rulings. Watkins also argues that he received ineffective assistance of counsel. For the following reasons, we affirm.

1. Watkins claims that the evidence was insufficient to support his conviction. Construed to support the jury's verdict, see *Norton v. State*, 293 Ga. 332, 333 (745 SE2d 630) (2013), the evidence showed that on October 13, 2018, the victim rode a

---

[1] The jury found him guilty of aggravated battery and battery, and the trial court merged the battery count into the aggravated battery count.

bicycle to a gas station, where he was picking up cans outside. Angela Watkins, Watkins's mother, drove into the parking lot of a neighboring business, parked her vehicle and walked toward Christopher North. North and Angela then walked together, past the entrance of the gas station, and towards the victim. As they approached the victim, Watkins drove into the gas station parking lot, exited his vehicle and approached the group. After Watkins reached the group, he immediately began to hit the victim. Watkins and North hit the victim repeatedly and continued to do so after the victim fell to the ground. At one point, the victim stood up, but Watkins picked him up, and slammed the victim back to the ground. The attack lasted about one minute, and then Watkins, North and Angela left the area.

The victim's treating emergency room physician testified that the victim had facial swelling and a fractured collarbone. The physician opined that the victim's "busted nose" and fractured collarbone were both consistent with a physical altercation.

The victim testified that after the attack, while he was in jail on a methamphetamine-related charge, Watkins bonded him out, apologized, bought him a meal, and offered to pay the victim $200 to drop the charges against him. Watkins took the victim to a library and prepared an affidavit for the victim's signature. The

2

affidavit stated that the incident "was blown out of proportion," that the victim was on methamphetamine at the time of the attack and that the victim would "like to make it known that [he does] not want to go forward with this prosecution."

Watkins took the victim to the sheriffs office, where the victim signed the affidavit and it was notarized. Watkins then presented the affidavit to an investigator with the district attorney's office. The investigator separated Watkins and the victim, and the victim told the investigator that he did not want to drop the charges.[2]

Watkins was indicted and tried with North, his co-defendant. At trial, surveillance videos of the attack and the surrounding area were played for the jury. The videos do not contain audio.

Watkins called Belinda Jones as a witness, who testified that on the day in question she was walking her dog near the gas station when she saw the victim ride by on a bicycle. As he rode past her, the victim appeared shaky and rode into the road, where a car, driven by Angela, narrowly avoided hitting him and Angela honked her car horn. The victim used a profane racist slur against Angela and said "I'll kill you" while continuing to ride to the gas station.

---

[2] However, the victim testified that he was likely on methamphetamine at the time of the attack.

3

Angela testified similarly as Jones. After her interaction with the victim while he was riding his bicycle, she parked at a laundromat near the gas station. She then saw North, a family friend, and asked him to accompany her into the gas station. As they approached the front door, the victim, who was near the entrance, said that "b**** would like to hit me," while identifying Angela's race. Watkins then joined the group, and the victim moved "like he was going for [Watkins.]" Then "the fight started."

Watkins testified that he happened to arrive at the gas station as his mother was walking to the front door with North. He claims that it appeared like the victim, who Watkins had never met before, "was fixing to do something to [his mother]" and the fight ensued.

The jury found North not guilty of aggravated battery, but guilty of battery, and Watkins guilty of both offenses. The trial court denied Watkins's motion for new trial.

(a) Watkins argues that the evidence was insufficient to support his conviction of aggravated battery, which was based on his indictment for rendering a member of the victim's body useless. See OCGA § 16-5-24 (a).

4

The victim's treating physician testified that the victim's fractured collarbone would limit the movement of the victim's arm for four to six weeks, and the victim testified that it restricted movement of his arm. "The bodily member need not be rendered permanently useless, and even the temporary reduced use of a bodily member may be sufficient to render it useless under the aggravated battery statute." *Ganas v. State*, 245 Ga. App. 645, 647 (1) (b) (537 SE2d 758) (2000) (footnotes omitted) (evidence of victim's broken finger was sufficient evidence of rendering a member of the victim's body useless). The evidence authorized the jury to find that Watkins caused bodily harm to the victim by rendering his arm useless by fracturing his collarbone. See *Dean v. State*, 313 Ga. App. 726, 727 (1) (722 SE2d 436) (2012) (sufficient evidence of rendering the victim's hand useless when defendant fractured victim's arm near the hand).

(b) Watkins also argues that the evidence was insufficient to support his battery conviction. The indictment charged that Watkins caused visible bodily harm to the victim. See OCGA § 16-5-23.1 (a). The physician testified that Watkins's nose was "busted," and video of the bloodied victim was played at the trial. There was sufficient evidence to support Watkins's conviction. See *Johnson v. State*, 260 Ga. App. 413, 414 (1) (579 SE2d 809) (2003) (there was ample evidence of battery when

5

the victim had scrapes and bruises on her neck consistent with being choked, along with the victim's testimony regarding the attack).

2. Watkins argues that the trial court erred by denying his motion for mistrial. While the prosecutor was questioning a police officer on direct examination, the prosecutor asked "[h]ow did you conclude your investigation?" The officer replied, "Mr. Watkins failed to come to the police department and speak with me." Watkins's counsel objected and moved for a mistrial. The trial court denied the mistrial but gave a curative instruction.[3] Watkins argues that the officer's testimony violated his right to remain silent.

"Whether to grant a mistrial is within the trial court's discretion, which an appellate court will not disturb unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." *Jones v. State*, 305 Ga. 750, 755 (3) (827 SE2d 879) (2019) (citation and punctuation omitted). Here, the officer's comment was non-responsive and made in passing. "Further, juries are presumed to follow curative instructions in the absence of proof to the contrary." Id. Watkins has

---

[3] The trial court instructed the jury as follows: "Members of the jury, before you left, [Watkins's trial counsel] objected to the testimony of this witness concerning the follow-up of Mr. Watkins with [the officer.] I have sustained that objection and you should give that further testimony no weight and make no inference because of it. You should disregard it completely."

6

provided no evidence that the jury disregarded the court's instruction, and therefore this allegation of error cannot be sustained. See id.

3. Watkins claims that the trial court erred in evidentiary rulings by limiting his cross-examination of the victim. "Like most questions about the admissibility of evidence, the scope of cross-examination is committed in the first instance to the sound discretion of the trial court, and we review a limitation of cross-examination only for an abuse of that discretion." *Lucas v. State*, 303 Ga. 134, 136-137 (2) (810 SE2d 491) (2018).

(a) Watkins argues that the trial court erred by limiting his questioning of a police officer regarding whether the victim had told him that "meth made him do crazy things." However, earlier in the trial the victim admitted that he had previously told police officers that he acted "crazy" while under the influence of methamphetamine. As such, it was a prior consistent statement.

A prior consistent statement will be admissible only if:

(1) the witness' credibility has been attacked, by some means other than impeachment by evidence of character or prior convictions; and (2) the prior statement logically rebuts that attack. Further, if the attack is by a charge of recent fabrication or improper influence or motive, a prior statement may logically rebut the attack only if it was made before the alleged fabrication, influence, or motive came about.

7

*McGarity v. State*, 311 Ga. 158, 165 (3) (856 SE2d 241) (2021) (punctuation omitted); see OCGA § 24-6-613 (c). Our review of the record reveals that while the victim's credibility was attacked, the prior consistent statement did not logically rebut that attack. Here, the victim admitted to the very statement at trial, and no other evidence was introduced to show that methamphetamine did not make the victim "crazy." As such, the trial court did not abuse its discretion by holding that the prior consistent statement was inadmissible.[4]

(b) Watkins also argues that the trial court erred by limiting his cross-examination of the victim regarding potential bias. While on cross-examination, defense counsel asked the victim questions about his prior arrest "for meth," and the victim responded that he was on probation. Defense counsel then asked: "Are you concerned that . . . since the State is asking you to testify, that might have an effect on your probation?" The State objected, and the trial court sustained the objection.

---

[4] Watkins also claims that the trial court erred by allowing the district attorney's investigator to testify regarding a conversation he had with the victim after the victim and Watkins brought the affidavit to the district attorney's office, arguing that it was hearsay. However, as Watkins attacked the victim's credibility regarding whether he wanted to sign the affidavit, the trial court did not abuse its discretion in allowing the evidence as a prior consistent statement. See OCGA § 24-6-613 (c).

8

"[A] defendant must be allowed to cross-examine a witness about punishment that the witness may have avoided as a result of a deal with the State for his testimony in the prosecution of the defendant." *Hill v. State*, 310 Ga. 180, 190-191 (7) (850 SE2d 110) (2020) (citation and punctuation omitted). While a trial court has discretion in limiting cross-examination, "[i]t is clear that the trial court abuses its discretion and commits error when it cuts off all inquiry on a subject on which the defense is entitled to reasonable cross-examination." Id. at 191 (7) (citation and punctuation omitted). However, "trial courts retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. (citation and punctuation omitted).

Here, the victim was questioned regarding his incarceration for a different offense at time of the trial, and the victim agreed when asked on cross-examination: "when you're talking - - when you're answering these questions and everything, in the back of your mind, you understand that they have you in custody right now?" The victim also agreed that he did not want to be in custody anymore. Further, Watkins has failed to present any evidence of a deal or potential deal between the victim and

9

the State for his statement or testimony. See *Williams v. State*, 292 Ga. 844, 846 (2) (742 SE2d 445) (2013). The trial court did not cut off all inquiry into the possible bias of the victim, but rather allowed the cross-examination to proceed while limiting the inquiry into whether he believed his testimony might impact his probation. We see no abuse of discretion in the limitation of the cross-examination of the victim. See generally id. at 847 (2).

(c) Watkins also argues that the trial court erred by ruling that evidence of an interaction between the victim and his mother was inadmissible. Watkins sought to introduce evidence that the victim had been charged with a violent crime against his mother at some time after the underlying attack. Watkins argues that the evidence was relevant for impeachment purposes because the victim testified that methamphetamine did not make him violent.

"A witness may be impeached by disproving the facts testified to by the witness. The use of extrinsic evidence to impeach a witness by contradiction, however, is not unlimited." *Moore v. State*, 356 Ga. App. 752, 755 (2) (848 SE2d 910) (2020) (citations and punctuation omitted). Watkins does not cite to any proffer of evidence, instead he cites to his counsel stating that the victim's mother would testify that on one prior occasion the victim "acted violently toward her" while he was

10

under the influence of methamphetamine. The record suggests that the incident with the victim's mother happened after the underlying incident, and a review of the videotape of the incident does not demonstrate that the victim was the initial aggressor. The trial court did not abuse its discretion when it excluded the impeachment evidence regarding whether the victim had ever acted violently while using methamphetamine. See generally id.

4. Watkins argues that the trial court erred by giving the jury charges in an order that he claims was "atypical" and "unusual." Watkins claims that the trial court erred by providing the affirmative defense jury charges prior to the charges for the offenses. However, the court provided the jury charges for both aggravated battery and battery, then immediately afterwards stated, "[n]ow I'm going to charge you with respect to an affirmative defense" and provided the jury charge for justification. As such, Watkins's claimed error did not occur. Furthermore, viewed as a whole, the jury charges were not misleading or confusing. See generally *Jones v. State*, 303 Ga. 496, 501-502 (III) (813 SE2d 360) (2018) (citation and punctuation omitted).

5. Watkins claims that the State engaged in prosecutorial misconduct, including obtaining perjured testimony from the district attorney's investigator and a police

11

officer. "A charge of prosecutorial misconduct is a serious charge and is not to be lightly made; having raised it, appellant has the duty to prove it by the record and by legal authority." *Kim v. State*, 298 Ga. App. 402, 403 (2) (680 SE2d 469) (2009) (citation and punctuation omitted). Watkins fails to support his claim that the investigator or officer gave perjured testimony. Watkins's other claims, such as that the State asked leading questions of its witnesses, do not amount to prosecutorial misconduct. See *Fugate v. State*, 263 Ga. 260, 266 (10) (431 SE2d 104) (1993) ("The mere fact that by parsing the record one may discover that the prosecutor 'got by' with asking a few arguably leading questions on direct examination hardly supports a claim of prosecutorial misconduct."). This enumerated error has no merit.

6. Watkins argues that he received ineffective assistance of trial counsel due to a number of alleged errors. To prevail on his claim of ineffective assistance of counsel, Watkins must show

> both that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. To establish deficient performance, an appellant must overcome the strong presumption that his counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way in the light of all of the circumstances.

12

*State v. Lane*, 308 Ga. 10, 18 (2) (838 SE2d 808) (2020) (one citation and punctuation omitted) (citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984)).

(a) Many of Watkins's claimed errors are unsupported by law or argument. For example, Watkins argues that his counsel failed to properly investigate and prepare the case, noting that Jones approached Watkins and not his counsel or investigators. However, Watkins called Jones as a witness at trial, and Watkins fails to even argue that he would have obtained a different result at trial if his counsel had approached Jones first. Similarly, although Watkins complains that counsel lost his train of thought while questioning him, the record shows that Watkins reminded counsel about the line of inquiry, counsel asked Watkins questions on the subject and the trial continued. There was no harm. Watkins also claims that it was error for his counsel to fail to call multiple witnesses or play an audio recording taken of the victim. However, he fails to point to a proffer of evidence regarding what the witnesses were expected to testify about or what the recording stated, and the evidence was not offered at the motion for new trial hearing. These unsupported claims fail. See *Manriquez v. State*, 285 Ga. 880, 881 (2) (684 SE2d 650) (2009) (defendant has burden to demonstrate both *Strickland* prongs, and when a defendant claims that trial

13

counsel performed deficiently by failing to call a witness for trial, the defendant "must introduce either testimony from the uncalled witness or a legally recognized substitute for his [or her] testimony, such as an affidavit").

(b) Watkins claims that his counsel should have asked the emergency room physician about the effects of methamphetamine on a person's brain and behavior. "The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." *Gaston v. State*, 307 Ga. 634, 642 (2) (d) (837 SE2d 808) (2020) (citation and punctuation omitted). "Decisions about cross-examination do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances." Id. (citation and punctuation omitted).

As discussed in Division 3 (a), the victim testified that methamphetamine made him "crazy." Therefore, even if the physician had been asked about the general effect of methamphetamine on people, his response would have been, at best, cumulative. Watkins also argues that his counsel should have asked the physician whether the victim's collarbone injury could have resulted from a bicycle accident. However, Watkins's trial counsel did ask this exact question. Watkins has failed to show that his counsel's cross-examination of the physician was ineffective.

(c) Watkins points to his trial counsel's alleged failure to object to the evidence of his attempts to influence the victim.[5] However, "evidence of a defendant's attempt to influence or intimidate a witness can serve as circumstantial evidence of guilt." *Dukes v. State*, 290 Ga. 486, 488 (3) (722 SE2d 701) (2012) (citation and punctuation omitted). This evidence was legally admissible and Watkins's trial counsel did not err by not objecting.

(d) Watkins claims that his counsel failed to consult with him regarding strategy. However, his counsel testified at the motion for new trial hearing that he met with Watkins and reviewed evidence with him. Watkins has failed to show how additional consultation would have effected the case. Counsel's alleged failure to consult did not constitute ineffective assistance of trial counsel. See generally *Hendrix v. State*, 298 Ga. 60, 64 (2) (a) (779 SE2d 322) (2015) ("In the context of a failure-to-consult claim such as that alleged here, the defendant must establish that his counsel's failure to consult was prejudicial to his defense, i.e., that there is a reasonable probability that, but for counsel's failure to consult, the result of his trial would have been different.") (citation and punctuation omitted).

_____

[5] Watkins's trial counsel filed a motion in limine regarding evidence of Watkins's actual arrest for influencing a witness, and the trial court granted the motion.

(e) Watkins also takes issue with his counsel's closing argument, while admitting that the closing argument was not transcribed. "Speculation that error may have occurred is insufficient to show any deficiency on the part of counsel, or prejudice therefrom, and is insufficient to show reversible error." *Parrott v. State*, 330 Ga. App. 801, 805-806 (3) (a) (769 SE2d 549) (2015) (citation and punctuation omitted); see also *Campbell v. State*, 269 Ga. 186, 188 (11) (496 SE2d 724) (1998) ("Because closing arguments were not transcribed, [Watkins] cannot show that any impermissible argument was made[.]").

(f) Watkins argues that the cumulative effect of trial counsel's alleged errors prejudiced the outcome of his trial. "When reviewing such a claim, we evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors." *Cox v. State*, 306 Ga. 736, 743 2 (e) (832 SE2d 354) (2019) (citation and punctuation omitted). Because Watkins has failed to show deficiency on any of his allegations of ineffective assistance, his cumulative effect claim has no merit. See id.

*Judgment affirmed. Rickman, C. J. and Dillard, P. J., concur.*