A05A0977. BERRY v. THE STATE.
(618 SE2d 72)

ANDREWS, Presiding Judge.

Nathan Berry, Jr., convicted by a jury of numerous offenses, including four counts of burglary,[1] appeals from the trial court's denial of his motion for new trial. He contests the sufficiency of the evidence, argues that trial counsel was ineffective, and contends that the trial court committed reversible error by giving additional instructions to the jury in the jury room without waiver of Berry's presence.

---

defendant did not cause contamination of property).

[10] See *CSX Transp. v. Snead*, 219 Ga. App. 491, 494 (1) (465 SE2d 690) (1995).

[1] Count 1 – burglary of the storage building of Max Smith between August 1 and August 15, 2000; Count 3 – burglary of the storage building of Sam Busby between August 15 and August 17, 2000; Count 8 – burglary of the storage building of Richard Davis between August 17 and August 18, 2000; Count 11 – burglary of the storage building of Daniel Allingham on August 19, 2000; Count 6 – theft by taking of the lawnmower of Gina Rogers between August 14 and August 17, 2000; Count 7 – theft by receiving of the weedeater of Gina Rogers on August 14, 2000; Count 15 – entering the automobile of James Hardy with the intent to commit theft between August 14 and August 15, 2000; Count 10 – between August 17 and August 18, 2000, possession of a Sears bench angle grinder from which he knew the serial number had been removed; Count 13 – possession of bolt cutters, a tool for commission of a crime, burglary, on August 19, 2000; and Count 14 – obstruction of an officer on August 19, 2000.

1. We first consider enumerations 3, 4, and 5,[2] all of which raise the issue of the legal sufficiency of the evidence. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Lowe v. State*, 223 Ga. App. 172 (477 SE2d 341) (1996).

On appeal, we view the evidence in the light most favorable to support the verdict, and Berry no longer enjoys a presumption of innocence. Moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Jackson v. Virginia*, supra; *Young v. State*, 242 Ga. App. 681 (1) (530 SE2d 758) (2000).

All of the following occurred within a small geographical area of Glennville, Georgia. Max Smith reported to Glennville police that his tool shed had been broken into sometime between August 1 and August 15, 2000. A number of small tools, electrical items, flashlights and other things had been taken. His Homelite gas blower, three rods and reels, and an electric motor were later recovered by police from E-Z Pawn Shop where these items had been pawned by Berry on August 14.

Sam Busby also reported a break-in of his home. Numerous items were taken, including a bicycle, Skil saw, garden tools and hand tools. Police recovered the bicycle and Skil saw from E-Z Pawn Shop where they had been pawned by Berry on August 17, 2000.

While she was away from her home for approximately 15 minutes one day in mid-August 2000, Gina Rogers's lawn mower and weedeater were taken from her backyard and porch. Police recovered the weedeater at the E-Z Pawn Shop where it had been pawned by Berry on August 14, 2000.

On August 17, 2000, the tool building and van of Richard Davis were broken into. Numerous items were taken, including a television, microwave, and a bench grinder. Davis had purchased the bench grinder new and the serial number had not been tampered with while in his possession. The bench grinder, with the serial number scratched off, was recovered from E-Z Pawn Shop where Berry had pawned it.

Daniel Allingham was constructing a building for Deborah Odom in August 2000, and left his tools in the building during that time. Between August 18 and 22, the building was broken into and items valued at over $8,000 were taken, including nail guns, circular saws, and bolt cutters.

On August 15, 2000, Jim Hardy reported the theft of tools, field glasses, a machete in a unique leather scabbard, and other items from

---

[2] The verdict is inconsistent with the weight of the evidence; the State failed to meet its burden to prove guilt beyond a reasonable doubt; and the trial court erred in denying his motion for new trial.

the tool box of his truck parked at his home. Hardy, a retired deputy sheriff from Florida, noticed and photographed footprints left beside the rear of his truck. He followed the trail of footprints for approximately three quarters of a mile and marked the trail he followed on a map for the jury. The trail led in the direction of Berry's house. The field glasses and machete were recovered from E-Z Pawn Shop where they had been pawned by Berry.

Glennville Officer Helton encountered Berry on August 19, 2000, walking near some apartments carrying some items in his hands. Helton asked him to come over so she could talk to him. Instead, Berry dropped the items he was holding and ran. Helton pursued him, but eventually lost him in the woods. When Helton returned to the apartments, she found bolt cutters and a case containing a nail gun in the area where Berry dropped the items he was carrying.

Berry was arrested later that day and was wearing shoes with an unusual sole tread pattern. These shoes, along with the photograph of the prints made near Hardy's truck, which had the same unusual pattern, were both in evidence.

Two similar incidents were also introduced into evidence. On April 18, 2001, the Glennville Inn's storage building was broken into and a push lawn mower was taken. That same day, Berry was found pushing this lawn mower down the street. Although Berry denied any knowledge of the break-in, two of his thumb prints were found on the storage building.[3] On May 26, 2002, Thomas Ryan became aware that rakes, gas cans, and an antique bicycle had been taken from his storage shed. When police were notified, Officer Bonny, who had spoken with Berry previously regarding another investigation, recalled seeing a bicycle like that described by Ryan at Berry's home. When asked about the bicycle, Berry said he was fixing it up to ride to work. Officer Bonny recovered the bicycle and the serial number was Ryan's.

All of the theft locations and the E-Z Pawn Shop were within easy walking distance of Berry's home, and Berry pawned many of the items on or near the date of the theft. When asked about pawning the items, Berry told police that he was pawning them for a Hispanic male named Alberto because Alberto had an argument with the pawnshop owner. He said he would meet Alberto at the Huddle House or the El Cheapo convenience store near the pawnshop. Berry was unable to provide any other information regarding Alberto or how to contact him. The operator of the pawnshop testified, however, that he did not know a Hispanic male named Alberto and had no disagreements with any Hispanics prior to Berry's pawning these items.

---

[3] Berry pled guilty to this burglary.

Although the evidence of recent, unexplained (or unsatisfactorily explained) possession of stolen goods may be sufficient to give rise to an inference that the defendant committed the burglary, the sufficiency of the evidence to support the conviction must still be adjudged by the totality of the evidence under the reasonable doubt standard applied in *Jackson v. Virginia*, [supra]. Once it is shown that goods were stolen in a burglary, absence of or unsatisfactory explanation of the possession of the goods will support a conviction for burglary based upon recent possession of the stolen goods. Whether a defendant's explanation of possession is satisfactory is a question for the jury; so is lack of explanation. What constitutes recent possession is in all cases a jury question, to be determined very largely from the character and nature of the stolen property. In the case sub judice, the verdict reflects the jury's dissatisfaction with [Berry's] explanation.

(Citations and punctuation omitted.) *Martin v. State*, 254 Ga. App. 40, 41 (1) (561 SE2d 154) (2002). See also *Faust v. State*, 189 Ga. App. 426, 427 (1) (375 SE2d 889) (1988).

The evidence was legally sufficient and there was no error in denying the motion for new trial on this ground.

2. Berry's first enumeration of error is that the trial court erred in communicating with the jury outside his presence and without seeking any waiver of his presence directly from him.

After the jury had begun deliberating, the jury sent this note: "Do we vote on each count? We understand if you vote on Number 1, burglary, do you also [vote on] Number 2 [theft by receiving]? We are not clear on this."

The trial court then stated in open court: "Now, I can do this one of two ways. I can either go back and tell them very quickly that they must vote on every count or I can bring them all the way back into the box and do that and *I'll do whatever is your preference*." (Emphasis supplied.) Trial counsel, with Berry present, then stated "I'd be satisfied if you tell them in the jury room, Judge."

Later, a second question was presented by the jury: "[C]an we plea guilty on Number 6 and Number 7?" Count 6 was the theft by taking of Gina Rogers' lawn mower and Count 7 was the theft by receiving of her weedeater. A directed verdict of not guilty had been granted to Count 5, burglary, regarding these tools.

The trial court stated that the "answer to that question is that those two counts are not mutually exclusive, they involve different property." Asked if they agreed that he should give them that answer, Berry's trial counsel and the prosecutor responded affirmatively.

Again, the trial court asked "And do you want them brought out or do you want me just [to] go back and tell them?" Berry's trial counsel stated "Just tell them." It is not disputed that Berry was present in the courtroom during this exchange also.

Trial counsel, during the motion for new trial hearing, stated that he did not believe he had specifically asked Berry if he consented to this procedure, because "I felt that was an appropriate question for counsel to be able to answer."

Relying on *Pennie v. State*, 271 Ga. 419, 420 (2) (520 SE2d 448) (1999), Berry argues that this was reversible error. In that case, however, the trial court had spoken with a juror, in the presence of defense and State counsel, but without Pennie's presence or knowledge. The juror had been spoken to by a spectator who appeared to recognize the juror, causing the juror to express concerns for his safety because he lived in the neighborhood where the crime occurred. The trial court inquired of the juror regarding whether he could continue and allowed him to return to the jury room. At this point, trial counsel waived Pennie's presence. Pennie did not become aware that this had occurred until new appellate counsel reviewed the transcript and Pennie affirmatively testified at the motion for new trial that, had she known, she would have elected to be present during the juror's questioning.

In *Pennie*, the Supreme Court reiterated that

> [i]t is true that a defendant may personally waive his right to be present at a stage in the trial, or counsel may waive this right for the defendant. *Wilson* [*v. State*, 212 Ga. 73, 77 (90 SE2d 557) (1955)]. But "in order for the waiver of counsel to be binding on the defendant, it must be made in his presence or by his express authority, or be subsequently acquiesced in by him." [Id.] at 77-78. See also *Brooks v. State*, 271 Ga. 456 (2) (519 SE2d 907) (1999).

Id. at 421 (2). See also *Hanifa v. State*, 269 Ga. 797, 806 (6) (505 SE2d 731) (1998).

Berry's situation is similar to and controlled by *Fuller v. State*, 277 Ga. 505 (2) (591 SE2d 782) (2004). There, the trial court, accompanied by defense counsel and the prosecutor, went to the jury room on two occasions without Fuller and communicated with the jury, first about continuing proceedings beyond the usual time, and later to explain the verdict form. There, Fuller was present in the courtroom when the visits were decided upon and when, following the visits, a summary of the communications was placed on the record by the trial judge. The record, however, did not indicate that Fuller asserted any objections he had, either to his counsel or to the court.

Therefore, any objection by Fuller to these communications was waived. See also *Sammons v. State*, 279 Ga. 386 (612 SE2d 785) (2005) (upon learning of such a communication with the jury, it is incumbent upon the defendant to object).

Because Berry was present with his counsel when counsel acquiesced in the court's proposed procedure, and the record is silent regarding any objection by Berry, we conclude that the trial court properly found any such objection waived. *Fuller v. State*, supra; *Hunter v. State*, 241 Ga. App. 242, 244 (5) (525 SE2d 766) (1999).

3. Berry argues that his trial counsel rendered ineffective assistance by failing to move for severance of the charges against him; failing to adequately prepare for trial by not searching for Alberto; and failing to move to suppress the evidence of the shoe print found and photographed by victim Hardy.

To prevail on a claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense. *Fults v. State*, 274 Ga. 82, 83-84 (2) (548 SE2d 315) (2001). The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous. *Kilpatrick v. State*, 252 Ga. App. 900, 902 (1) (557 SE2d 460) (2001). In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Rucker v. State*, 271 Ga. 426, 427 (520 SE2d 693) (1999). We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial court could not reliably have produced a just result. *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002).

(a) Berry first argues that trial counsel was ineffective because he did not file a motion to sever the offenses charged.

The decision whether to file a motion to sever is a matter of trial tactics and the fact that such a motion was not filed does not require a finding that trial counsel was ineffective. *Bogan v. State*, 249 Ga. App. 242, 245 (2) (b) (547 SE2d 326) (2001); *Louis v. State*, 185 Ga. App. 472, 474 (3) (364 SE2d 607) (1988).

As trial counsel noted during the hearing on the motion for new trial, after researching the issue, he concluded that there was no basis for such a motion. In fact, a trial involving numerous burglaries occurred the week prior to Berry's and involved the same trial judge, defense counsel, and prosecuting attorney. There, the trial court found that the burglaries would have been admissible, even if not included in the same indictment, as similar transactions to show

identity, motive, intent, course of conduct, scheme, plan, or bent of mind. *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991); *King v. State*, 246 Ga. App. 100, 101 (2) (539 SE2d 614) (2000). Therefore, trial counsel concluded that a motion to sever in Berry's case would have been futile and we agree. See also *Smith v. State*, 225 Ga. App. 553, 556-557 (1) (484 SE2d 515) (1997).

(b) Failure to attempt to find Alberto is also claimed as an incident of ineffective assistance, based on *Heyward v. Humphrey*, 277 Ga. 565 (592 SE2d 660) (2004).

That case, however, involved trial counsel's failure to attempt to locate a named eyewitness who would have supported the accused's defense of justification. In addition to the name, the witness' phone number and home address were known to the State. Here, the police had no information that could assist in the location of Alberto. Further, the pawnshop operator totally contradicted the portion of Berry's claim involving an alleged dispute with Alberto.

There has been no showing that trial counsel's performance in this regard was deficient.

(c) Finally, Berry claims trial counsel was ineffective for failing to seek to suppress the shoe print evidence.

Appellate counsel has failed to indicate any viable basis upon which such evidence could have been suppressed or even objected to at trial.[4] Therefore, there is nothing for us to review regarding this ground. See *Spear v. State*, 271 Ga. App. 845, 846 (2) (610 SE2d 642) (2005); *Sanders v. State*, 253 Ga. App. 380, 382 (559 SE2d 122) (2002).

There was no abuse of discretion in the trial court's denial of Berry's motion for new trial on the basis of ineffective assistance of counsel.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED JULY 12, 2005 — ■■■■■■■■■
■■■■■■■■■■■■■■■■■■

*Carol B. Miller*, for appellant.
*Thomas Durden, District Attorney, Sandra Dutton, Assistant District Attorney*, for appellee.

---

[4] Part of the argument here contains factual claims regarding the commonality of the shoe and its tread. There was, however, no evidence of this presented during the hearing on the motion for new trial and we do not consider such arguments not made below.