**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 28, 2019**

# In the Court of Appeals of Georgia

A18A1924. STRICKLAND v. THE STATE.                    DO-061C

DOYLE, Presiding Judge.

After a jury trial, Kenneth Strickland was convicted of robbery by force,[1] burglary,[2] aggravated battery,[3] two counts of false imprisonment,[4] and theft by taking.[5] After his trial in 2009, Strickland filed a motion for new trial, which was later amended in 2010, 2013, and 2014. A motion for new trial hearing eventually was held in 2014, and the trial court denied the motion four years later in 2018. Strickland now

---

[1] OCGA § 16-8-40 (a) (1).

[2] OCGA § 16-7-1 (b).

[3] OCGA § 16-5-24 (a).

[4] OCGA § 16-5-41 (a).

[5] OCGA § 16-8-2. The jury acquitted Strickland of aggravated assault and theft by receiving stolen property.

appeals, arguing that (1) the evidence was insufficient to support his conviction, and (2) trial counsel, who later was disbarred, was ineffective. For the reasons that follow, we affirm.

Viewed in favor of the verdict,[6] the record shows that on the morning of May 17, 2008, an individual rang the doorbell at the home of 92-year-old Henry Wood. Seventy-two-year old Dereda Taylor, Wood's live-in care-giver, looked out the front window, but did not see anyone at the door; at some point later, she opened the front door to get the newspaper, and an intruder pushed his way into Wood's home, accosting her. The intruder tied up Taylor, demanded money, and asked the location of her room and of "pops's" room. Wood, who died before trial, came out of his bedroom and was assaulted by the intruder; at trial, the parties stipulated that Wood sustained a broken jaw during the incident. After tying up Wood and ransacking the house, the intruder left the home with a 27-inch television, $125 in cash, and Taylor's Ford Explorer.

---

[6] See *Haslam v. State*, 341 Ga. App. 330, 331 (801 SE2d 61) (2017).

Taylor called 911 and described to police that the intruder wore a cap and had his face covered with a hand towel[7] so that she could only see his eyes. Taylor was not able to identify a suspect from a photographic lineup. At trial, Taylor testified that Strickland's general size and complexion were the same as the robber, but she testified on cross-examination that the intruder was about five feet five inches tall. Taylor denied that a wash cloth entered into evidence by the State was the same one used by the intruder.

A manager of a pawn shop near Wood's home testified that Strickland frequently pawned items at that location; based on a pawn ticket issued on the morning of the incident, Strickland came in to the store to pawn a television fitting the description, including the serial number, of the one taken from Wood. The manager testified that Strickland never had pawned any other stolen property at that location, and his height listed in their database was five feet nine inches, which was based on the information on his state identification.

The day of the incident, police found Taylor's stolen Ford Explorer in the parking lot across from the pawn shop with the key in the ignition and the engine

---

[7] Taylor described a hand towel as being one size larger than a wash cloth and smaller than a bath towel.

running. Strickland was arrested at the same pawn shop six days later when the clerk notified the police that he was back at the shop. The manager admitted on cross-examination that although the police could have gotten copies of surveillance video from the shop from the morning of the incident, they failed to do so.

After taking Strickland into custody at the pawn shop, the investigator advised him of his Miranda rights and interviewed him. At first, Strickland denied being at the pawn shop on the date of the incident, and then he admitted he had pawned a television, which he said he had gotten from a person named Harold, who gave him money in exchange for pawning the item. Strickland told the officer that he met Harold in the parking lot across from the pawn shop, that Harold was driving a gray Jeep, and that he did not know Harold's last name or where he lived.

Thereafter, the jury returned a guilty verdict against Strickland, acquitting him of theft by receiving stolen property.

1. Strickland argues that the evidence was insufficient to support the verdict because Taylor's testimony regarding the appearance of the intruder differed from his physical appearance and no other evidence tied him to the scene of the home invasion other than pawning stolen property, which did not establish that he committed the other crimes. Although it is true that Taylor could not provide much testimony about

the intruder's physical appearance, and she was unable to identify his photograph from a lineup, there was sufficient circumstantial evidence upon which the jury could conclude that Strickland committed the home invasion and crimes during the invasion, rather than merely pawning the television for a man named Harold.

> Once it is shown that goods were stolen in a [robbery or burglary], absence of or unsatisfactory explanation of the possession of the goods will support a conviction for [those crimes] based upon recent possession of the stolen goods. Whether a defendant's explanation of possession is satisfactory is a question for the jury; so is lack of explanation.[8]

The jury heard the weaknesses of the State's case against Strickland, including the lack of any solid testimony about the intruder's appearance, but it was for the jury to weigh that evidence against other evidence presented by the State: the geographic proximity of Strickland's home to the crime and the pawn shop, the temporal proximity of Strickland's visit to the pawn shop after the intrusion, the state of Taylor's vehicle abandoned and left running across from the pawn shop in the location where Strickland said he met Harold, Strickland's initial denial of pawning

---

[8] (Punctuation omitted.) *High v. State*, 282 Ga. 244 (1) (647 SE2d 270) (2007), quoting *Berry v. State*, 274 Ga. App. 366, 369 (1) (618 SE2d 72) (2005).

a television on the day in question, and the lack of evidence about Harold's identity.[9]

Indeed, it is clear from the jury's acquittal of Strickland for theft by receiving stolen property and aggravated assault that the jury carefully weighed the State's evidence and applied the correct standard. Accordingly, this enumeration is without merit because the evidence as detailed above was sufficient for a rational trier of fact to find Strickland guilty of the charged crimes.[10]

2. Strickland enumerates several failures of his trial counsel to provide effective assistance of counsel.

> To prevail on a claim of ineffective assistance, [Strickland] must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. To show that the performance of his lawyer was deficient, [Strickland] must prove that his

---

[9] See *Riles v. State*, 321 Ga. App. 894, 895-897 (1) (743 SE2d 552) (2013) ("Questions about the reasonableness of hypotheses are generally for the jury's determination, and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the defendant's guilt, this Court does not disturb such finding unless the verdict of guilty is insupportable as a matter of law.") (punctuation omitted).

[10] See *High*, 282 Ga. at 244-245 (1) (burglary); *Ayers v. State*, 286 Ga. App. 898, 901 (1) (c) (650 SE2d 370) (2007) (false imprisonment); *Johnson v. State*, 260 Ga. App. 413, 415-416 (1) (579 SE2d 809) (2003) (aggravated battery based on broken wrist and broken nose); *Watson v. State*, 214 Ga. App. 650, 651 (2) (448 SE2d 718) (1994) (robbery by force); *Brown v. State*, 157 Ga. App. 473, 474-475 (1) (278 SE2d 31) (1981) (theft by taking).

lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. And to show that he was prejudiced by the performance of his lawyer, [Strickland] must prove a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. This burden, though not impossible to carry, is a heavy one.[11]

(a) Strickland argues that trial counsel was ineffective for failing to object to Taylor's testimony about statements made by Wood, who died prior to trial, regarding Wood's injury. Strickland also argues that trial counsel was ineffective for failing to object to the investigator's testimony about Wood's statements regarding his injuries.

Pretermitting whether Taylor's testimony about Wood, which largely was based on her own observation of him, would have been admitted as non-hearsay, Strickland has not shown that trial counsel was ineffective. At the motion for new trial hearing, trial counsel did not believe that the hearsay testimony negatively affected his theory of the case — that another individual committed the invasion, robbery, and assaults, and Strickland merely pawned the television after receiving it

---

[11] (Citations and punctuation omitted.) *Bradley v. State*, 292 Ga. 607, 613-614 (5) (740 SE2d 100) (2013), citing *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

7

from that person. In support of this strategy, trial counsel stipulated to Wood's injury prior to trial. Trial counsel did not believe that objecting to any such hearsay was beneficial, instead drawing out the lack of identity evidence. In other instances, trial counsel objected when the State failed to lay proper foundation for admitting evidence, for leading the witness regarding her identification of the intruder, and to prevent the State from entering a similar transaction into evidence. Moreover, trial counsel illustrated through cross-examination the weaknesses in the State's case, such as the difference between the hand towel Taylor saw on the intruder and the wash cloth recovered by police. Finally, trial counsel objected prior to the investigator's testimony to prevent the State from offering hearsay testimony by Wood, and the trial court agreed that it should be kept to a minimum. We cannot say that trial counsel's strategy was unreasonable and, therefore, the trial court did not err by finding that counsel was not ineffective for failing to object to Taylor's or the investigator's hearsay testimony about Wood's injury.[12]

---

[12] See *Bradley*, 292 Ga. at 615 (5). See also *Reid v. State*, 235 Ga. 378, 379 (1) (219 SE2d 740) (1975) ("Certain decisions relating to the conduct of the case are ultimately for the accused and others are ultimately for defense counsel. The decisions which are to be made by the accused after full consultation with counsel are: (i) what plea to enter; (ii) whether to waive jury trial; (iii) whether to testify in his own behalf. . . . The decisions on which witnesses to call, whether and how to conduct cross-examinations, what jurors to accept or strike, what trial motions should

(b) Strickland argues that trial counsel was ineffective for failing to object when the investigator testified that he stated "I don't think you're being honest with me" to Strickland during the interview. Strickland argues that this was an impermissible comment on character, and trial counsel should have objected. The State does not address this argument in their brief; however, our review establishes that failure to object to this was not deficient performance.

"[A] witness, even an expert, can never bolster the credibility of another witness as to whether the witness is telling the truth. And, Georgia law generally precludes a witness from testifying as to his or her opinion regarding an ultimate issue in the case because to do so would invade the province of the jury."[13] Frequently, however, courts have distinguished between "interrogation comments" and "sworn testimony" when reviewing whether such comments invade the province of the jury.[14]

---

be made, and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client.").

[13] (Citations and punctuation omitted.) *Windholm v. State*, 315 Ga. App. 855, 858-859 (2) (729 SE2d 25) (2012).

[14] Id. at 859 (2). See also *Hames v. State*, 278 Ga. 182, 184 (3) (598 SE2d 459) (2004); *Rowe v. State*, 276 Ga. 800, 803 (2) (582 SE2d 119) (2003); *Axelburg v. State*, 294 Ga. App. 612, 616 (2) (669 SE2d 439) (2008).

9

Here, the comment was a passing reference by the investigator at the end of the narrative about his interrogation of Strickland. Although it was not a video or audio recording of the interrogation, the testimony was presented in a way that clearly indicated it was part of an interrogation rather than a testimonial opinion by the investigator at trial. Pretermitting whether the statement was prejudicial,[15]

> [i]n assessing the performance of [Strickland's] lawyer, we must remember that there are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. We think that some reasonable lawyer might not have objected to this testimony for sound strategic reasons [such as not calling further attention to the passing limited reference to honesty], and for this reason, [Strickland] cannot show that his lawyer performed in an objectively unreasonable way.[16]

Accordingly, the trial court did not err by denying the motion for new trial on this basis.

(c) Trial counsel failed to object when an investigator testified that Strickland invoked his right to remain silent and ended his interview with the investigator, which

---

[15] Compare with *Windholm*, 315 Ga. App. at 860 (2).

[16] (Citations and punctuation omitted.) *Shields v. State*, 307 Ga. App. 830, 838 (2) (706 SE2d 187) (2011). See also *Reid*, 235 Ga. at 379 (1).

was an impermissible comment on his right to remain silent.[17] Nevertheless, the transcript establishes that the investigator's comments were a conclusion to his description of the interview, which the Georgia Supreme Court has established is not probative on the guilt or innocence of the defendant and is therefore not prejudicial.[18] Accordingly, the trial court did not err by denying the motion for new trial on this basis.

(d) Finally, Strickland contends that trial counsel was ineffective because he failed to question thoroughly the prospective jurors during voir dire.

At the hearing on the motion for new trial, trial counsel testified that he generally did not ask a lot of voir dire questions of jurors because he did not like being redundant to the court and the State. Trial counsel did not like to "hound" the potential jurors, and he did not want to draw out the heinous nature of the home invasion because of his theory that Strickland did not commit the home invasion or

---

[17] See *Doyle v. Ohio*, 426 U. S. 610 (96 SCt 2240, 49 LE2d 91) (1976).

[18] See *Cape v. State*, 246 Ga. 520, 523 (2) (272 SE2d 487) (1980) (explaining that "[t]o reverse a conviction, the evidence of the defendant's election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury."). Compare *Reynolds v. State*, 285 Ga. 70, 71-72 (673 SE2d 854) (2009) (holding prejudicial the prosecutor's statement that the jury should consider that the defendant did not attempt to talk to police about his version of a domestic incident).

11

assaults. Additionally, he did not want to plant the idea that pawning items was a negative behavior because Strickland frequently pawned non-stolen items.

A juror who is a victim of the same type of crime as the incident being tried is not necessarily a basis upon which to disqualify the juror if "nothing in the voir dire transcript indicates that the prospective juror's opinion [is] so fixed and definite that the juror [would not be able] to set the opinion aside and decide the case based upon the evidence and the court's instructions."[19] Strickland has failed to show that counsel's performance in this instance was deficient. The transcript of voir dire does not show that any of the jurors could not put aside their own experiences and fairly weigh the evidence.[20] Strickland also has failed to establish that any of the jurors actually seated held a bias against him or that trial counsel should have attempted to have a specific juror struck for impartiality. Moreover, we see nothing in the record to indicate that trial counsel's overall performance during voir dire was deficient.[21]

---

[19] (Punctuation omitted.) *Garrett v. State*, 280 Ga. 30, 31 (2) (622 SE2d 323) (2008), quoting *Head v. State*, 276 Ga. 131, 133 (2) (575 SE2d 883) (2003). See also *Reid*, 235 Ga. at 379 (1).

[20] See *Garrett*, 280 Ga. at 31 (2).

[21] See *Reid*, 235 Ga. at 379 (1).

Accordingly, the trial court did not err by denying the motion for new trial on this basis.

*Judgment affirmed. Dillard, C. J., and Mercier, J., concur.*